Jones *vs.* Fulwood.

No. 23.—HENRY P. JONES, plaintiff in error, *vs.* JOHN T. FULWOOD, defendant in error.

[1.] Where L, as the guardian of F, on a settlement with J, for certain negroes named in a trust deed, and one of the negroes named therein was missing, about which there was, however, some controversy, and to settle the matter, another negro was given up in the place of the one alleged by the guardian to be missing : *Held,* that the party giving up such negro, could not afterwards recover him from the guardian's ward, in an action of trover; provided, he gave him up to the guardian on the settlement, by way of *compromise,* for the one named in the deed of trust, which was alleged to have been missing.

[2.] The Courts will favor *family compromises* of even *doubtful* rights, when fairly made.

Trover, in Bibb Superior Court.    Motion for a new trial.    Decided by Judge STARK, presiding for Judge POWERS.    May Term, 1852.

This was an action of trover, brought by Henry P. Jones, against John T. Fulwood, for the recovery of a negro man slave, Frank.

On the trial, the plaintiff introduced in evidence a deed of trust, executed by Andrew Hampton, Mary Hampton, his wife, and her trustee, Thomas H. Wilkinson, in 1829, by which the said Andrew and Mary, conveyed to John T. Fulwood, certain negroes, when he should arrive at the age of twenty-one.[a]

Plaintiff also introduced in evidence, a catalogue of the names and ages of the negroes; the right hand side containing the names and ages of those conveyed in the deed of trust, and on the left, the names and ages of their increase were set down. This catalogue was made out and submitted by Mrs. Hampton, in 1846. " Plummer," a boy, was put down as one of Fanny's children, (who was named in the deed of trust,) at fifteen years old. The right column of the catalogue contained, a boy named Jim, set down at "three years" of age.

Plaintiff then read in evidence, the depositions of Thomas R. Lamar, taken by' commission. Witness was guardian for the defendant; when his ward came of age, he attended in Laurens County, to receive the negroes belonging to the defendant. Witness received a boy named Plummer; a boy by the name of Jim, named in the trust deed, was missing, and plaintiff gave up Frank in his stead. Col. Jones, at the time of the settlement, said that Plummer and Jim were the same, and it was so understood in the family; Plummer was put down by Mrs. Hampton, as fifteen years old, at the settlement, in December, 1846."

Ivey Morris, by interrogatories, examined, swore—" That he was acquainted with the negroes of Andrew Hampton, in 1839; Andrew Hampton was the husband of John Fulwood's widow; witness knew a boy of his, whose name was Jim Plummer; Hampton sometimes called him Jim, and sometimes Plummer; he was Fanny's child. In 1839, he was twelve or fourteen years old, and Fanny at that time had but two children, Moses and Jim Plummer."

Alsey Hair examined by interrogatories, swore—" She was well acquainted with the negroes of Andrew Hampton, who was the husband of John Fulwood's widow; she knew Jim or Plummer, sometimes called by one, sometimes by the other name, was the son of Fanny; Jim or Plummer, is now about 22 years

of age; he was, at the time I became acquainted with him, about three or four years old—which was about sixteen years or more ago; Fanny at that time, had three children, Moses, Jim or Plummer, and an infant child."

The defendant introduced no evidence.

Among other things, the Court charged the Jury—" That if they believed that Frank was given up by plaintiff, to Thomas R. Lamar, guardian of defendant, in the way of compromise, that they must find for the defendant."

The Jury found a verdict for the defendant.

Whereupon, counsel for plaintiff moved the Court for a new trial, upon the grounds,

1st. That the Court erred in its charge to the Jury, there being no evidence of any compromise to support the charge.

2d. The Jury found contrary to law.

3d. The Jury found contrary to evidence.

The Court refused the motion for a new trial, and this decision is assigned as error.

POE, NISBET & POE, for plaintiff in error.

CHAPPELL, for defendant in error.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] This was an action of trover, for the recovery of a negro slave, named Frank. The plaintiff in the action, insists that he is entitled to recover, on the ground that Frank was delivered to the guardian of defendant, by *mistake*, at the time his negroes mentioned in the trust deed, were delivered.

The record shows that at the time the negroes and their increase, mentioned in the deed of trust, were delivered to the defendant's guardian, by the plaintiff, that a boy by the name of Jim, included therein, was *missing*. The guardian claimed him, or, that he should be accounted for; the plaintiff, in order to account for the missing negro, said that Jim and Plummer was the same negro; that he was sometimes called Jim, and sometimes Plummer. Here

then, was a *controversy* between the guardian of defendant and the plaintiff, as to whether the boy Plummer, which had been delivered, was the same negro which was designated in the deed of trust, by the name of Jim.    The plaintiff appears to have been as *fully cognizant at the time of the delivery of the negroes,* (if such was the fact,) that Jim and Plummer was the same negro, as he is *now*; for Doctor Lamar testifies, " that at *the time of the settlement,* the plaintiff said Plummer and Jim were the same, and it was so understood in the family ;" the plaintiff, however, gave up the boy Frank, now sued for, in the place of Jim, who was missing.    There is *conflicting* evidence in the record, as to the fact of Jim and Plummer being the same negro.

The Court charged the Jury, among other things, that if they believed that Frank was given up by the plaintiff, to the guardian of defendant, by way of *compromise,* that they must find for defendant; to which portion of the charge of the Court, plaintiff excepted, and now assigns the same for error here.

The argument is, that there is *no evidence* in the record which would authorize the charge of the Court; that it was made upon an *assumed* state of facts, and therefore erroneous, as has been repeatedly ruled by this Court.    There is no foundation for the objection, in our judgment.

Doctor Lamar, as the guardian of the defendant, demanded of the plaintiff, the negroes named in the trust deed, and their increase.    On the settlement with the defendant's guardian therefor, one of the negroes named in the trust deed, was *missing*.    The plaintiff said Jim and Plummer was the same negro, and was so understood in the family.    The guardian does not appear to have been satisfied with that statement of the plaintiff in regard to Jim, and required another negro in his place.    There was clearly a *controversy* between the defendant's guardian and the plaintiff, in regard to the boy Jim ; that controversy was settled or compromised, by the plaintiff's giving up to the guardian another negro by the name of Frank, which the guardian has since turned over to his ward, who is now the defendant.

[2.] In *Stockley vs. Stockley,* (1 *Vesey and Beame,* 30,) Lord *Eldon* held, that *family compromises* of even a *doubtful* right,

should be favored.  We find no error in the charge of the Court,
and the Jury having found a verdict in favor of the defendant,
on the evidence submitted, we shall not disturb it.

Let the judgment of the Court below be affirmed.